IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL RANIERI,

        Plaintiff,

v.

WARDEN DAVID BYRNE, et al.,

        Defendants.

CIVIL ACTION
NO. 16-2686

**OPINION**

**Slomsky, J.**                                                                              January 4, 2017

## I.    INTRODUCTION

Plaintiff Daniel Ranieri, proceeding pro se, brings this suit against Defendants Warden David Byrne and the Medical Director of the George W. Hill Correctional Facility (collectively, "Defendants") for alleged violations of Section 1983 of the Civil Rights Act.[1] Specifically, Plaintiff asserts a violation of his Eighth Amendment rights arising from Defendants' deliberate indifference to his serious medical needs.

## II.    BACKGROUND

In his Complaint, Plaintiff states that he was arrested in April 2015 at the Gaudenzia House Treatment Center.[2] Plaintiff asserts he was working on personal medical problems at

---

[1] George W. Hill Correctional Facility ("GWHCF") is a privately owned prison located in Delaware County, Pennsylvania. The Facility is currently run by Community Education Centers ("CEC") under a daily functional service contract. The Facility is responsible for the incarceration of pre-trial detainees and persons serving a county sentence of two years less one day or a state sentence of five years less one day. GWHCF Medical Director's name was not disclosed during this litigation.

[2] When analyzing the sufficiency of a pro se Complaint, the Court must liberally construe the pleading. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). Moreover, the facts as alleged in Plaintiff's Complaint are accepted as true for purposes of deciding the Motion to Dismiss.

Gaudenzia at the time of his arrest.[3]  (Doc. No. 3 at 3.)  Following his arrest, Plaintiff was transferred to GWHCF.  Plaintiff had been confined there on prior occasions.  He alleges that officials at this Facility were aware that he had Hepatitis C based on his prior confinements.  Plaintiff also asserts that officials at GWHCF failed to transfer his medical records or medication with him when he was sent to a different prison known as "Gander Hill" in the State of Delaware.  This failure, he claims, resulted in severe and permanent liver damage.

Plaintiff initially claims his medical needs were ignored by GWHCF staff.  (Id.)  In his Complaint, he alleges that he received no medical treatment from April 2015 to December 4, 2015 while at GWHCF.  He claims that he first received treatment on December 23, 2015, only after he left GWHCF, when he was admitted to Christiana Hospital in Delaware.  At this time, he was incarcerated at Gander Hill.  (Id.)  Despite this claim, in subsequent filings and in statements made on the record at the October 5, 2016 hearing, Plaintiff admitted that he received treatment while incarcerated at GWHCF.  Plaintiff stated that he was "taking a few blood tests" while at GWHCF.  (Doc. No. 24 at 11.)  Plaintiff also said that "medical would say, oh, you're okay.  You're okay.  You're okay[,]" when he would ask about the blood test results.  (Id. at 12.)

---

At the hearing held on October 5, 2016, Plaintiff also agreed that the facts in his Complaint could be supplemented with his later filings in this case and factual statements he made at the hearing.  (Doc. No. 24 at 24.)

Furthermore, according to Defendants' Motion to Dismiss, Plaintiff was incarcerated at GWHCF from April 15, 2015 to December 4, 2015.  (Doc. No. 13 at 3.)  Plaintiff was immediately discharged to the custody of the State of Delaware. (Doc. No. 26 at 1.)  Although Plaintiff had medical issues while incarcerated at GWHCF, it appears that his medical condition worsened after he left that facility.  Plaintiff is challenging in this case his medical treatment at GWHCF and the conduct of Defendants after he left that Facility and was transferred to a different prison known as Gander Hill in the State of Delaware.

[3] The record does not describe the treatment Plaintiff was receiving at Gaudenzia House.

In addition, in his supplemental filings, Plaintiff alleges that he never suffered from high blood pressure, Type II diabetes, or mental health problems. Plaintiff claims, however, that he received treatment for these conditions while at GWHCF. (Doc. No. 26 at 2.) The record shows that as part of his health care regime while at GWHCF, Plaintiff was taking, Amlodipine (Norvasc) 10 mg, once per day, Doxepin (Sinequan) 150 mg, once per day, Fluoxetine (Prozac) 20 mg, two capsules per day, Losartan (Cozaar) 100 mg, once per day, and Metformin HCL 500 mg, once per day.[4] (Doc. No. 26 at Ex. A.)

Plaintiff asserts that the medical staff at GWHCF knew that he had Hepatitis C and liver damage and that it "was always documented during the intake medical process." (Id.) Plaintiff claims that "[i]ts a fact with liver damage mental health medication should not be given – to anyone, but the Community Education Center medical staff, and [the] medical director totally ignore[d] it and medications are forced on more inmates than should be." (Id.) Moreover, Plaintiff asserts that he was forced to take medication that "caused further damage to [his] liver [and that he suffers] from [cirrhosis] of [his] liver." (Id. at 3.) He claims that the Hepatitis C made him tired and the staff at GWHCF would only give him "mental health medicines to [help

---

[4] The Court will take judicial notice that Amlodipine is a commonly used medication to treat high blood pressure and coronary artery disease. Doxepin is a tricyclic antidepressant commonly used to aid anxiety disorders and trouble sleeping. Fluoxetine is an antidepressant commonly used to aid depressive disorder. Losartan is commonly used to treat hypertension. Metformin is used to treat Type II diabetes.

> Rule 201 of the Federal Rules of Evidence allows a court to take judicial notice of adjudicative facts. Fed.R.Evid. 201(a). Facts that may be judicially noticed are those not subject to reasonable dispute because they are either generally known within a trial court's territorial jurisdiction or can be readily determined from sources whose accuracy cannot reasonably be questioned. Id. at 201(b).

United States of America v. CVS Caremark Corp., 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012).

Plaintiff admits that he saw "three [medications] that [he] was taking" from the list, prior to his incarceration at GWHCF. (Doc. No. 24 at 10.)

him] sleep." (Doc. No. 24 at 14.)  Plaintiff admits that he was unhappy with the treatment at GWHCF. (Id. at 15.)

Upon discharge from GWHCF, Plaintiff asserts that he was given no medication to take with him, even though there are reminders in the holding cell for prisoners to take their medication with them. (Id. at 3-4.) On the record, at the hearing held on October 5, 2016, Plaintiff stated:

> Your Honor, on December 4th, I didn't receive any medications. There's a big sign on intake that tells you before you're discharged [to] make sure you tell the sergeant, a CO, or a medical staff to give you your medications. I asked for my medications, the sergeant told me we don't have time for that. You have to go. Delaware is here to pick you up.
>
> They rush me out of there. He said Delaware would have my medications. I got to Delaware, they gave me no medications for [sic] the first 10 days and I fell out and ended up in Christiana Hospital. My whole system shut down because I wasn't getting any medication at all.[5]

(Doc. No. 24 at 8-9.)  Plaintiff further claims that "the George W. Hill Prison/Community Education Center staff failed in it[s] duties to send all medications or proof of medication consumption by this [P]laintiff prior to 12/4/2015 and from 4/15/15 to 12/4/15." (Doc. No. 26 at 6.)  As noted, Plaintiff asserts that as a result of this lapse, he went more than ten days without medications while in custody at Gander Hill Prison in Delaware. (Id.)  Plaintiff agreed, however, that Defendants were not responsible for medications the State of Delaware failed to give him. (Doc. No. 24 at 9.)

---

[5] The Court asked Plaintiff to clarify whether he meant the State of Delaware or Delaware County, Pennsylvania. Plaintiff responded with "[t]he State of Delaware." (Doc. No. 24 at 9.)

In support of his claims, Plaintiff stated that he filed several grievances with the Delaware County Prison, but never received a response.[6]  (Id.)  He also claims that he sent requests to "upper staff" but these requests were never answered.  (Id. at 4-5.)

Plaintiff further alleges that "Coatesville Veterans Hospital [is] addressing [his] 'liver' damage, that George W. Hill ignored from 4/15/15 to 12/4/15."  (Id. at 6.)  Plaintiff asserts that "only when [he] had life threatening problems 2/12/16 did George W. Hill, C.E.C. Medical Staff take, [any] action – four times admitted to Christiana Hospital and Crozer Hospital 12/23/15 to 2/12/16."  (Id.)

Defendants have filed a Motion to Dismiss the Complaint in its entirety.  (Doc. No. 13.)  Plaintiff filed several Responses.  (Doc. Nos. 14-16.)  A hearing on the Motion was held on October 5, 2016 at which the Court requested Defendants file a Supplemental Motion to Dismiss based on the statements made by Plaintiff on the record supplementing the Complaint.  (Doc. No. 22.)  On November 4, 2016, Defendant filed a supplemental brief in support of their Motion to Dismiss.  (Doc. No. 25.)  On November 17, 2016 and November 18, 2016, Plaintiff filed two more responses.  (Doc. Nos. 25-26.)  The Motion is now ripe for disposition.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[6] Plaintiff notes in his Complaint that he filed his grievances with the "Delaware County Prison." Apparently, he was referring to GWHCF.  (Doc. No. 1 at 4.)  It appears that Plaintiff filed the grievances while at GWHCF, which is a prison located in Delaware County, Pennsylvania.

matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim

6

that would entitle [him] to relief." Olaniyi v. Alexa Cab Co., 239 Fed. App'x. 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

IV.   ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of the Complaint for several reasons.[7]  (Doc. No. 13.)  The Court will address each of Defendant's arguments in turn.

### A. Plaintiff Has Failed to Plausibly Allege a Serious Medical Need or that Defendant Medical Director Acted with Deliberate Indifference

Defendants argue that Plaintiff has not adequately pled a claim of serious medical need or of deliberate indifference which are required in order to sustain an Eighth Amendment violation. (Doc. No. 13 at 8.)  The Court agrees.

Plaintiff brings this action under 42 U.S.C. § 1983.  Under Section 1983, a plaintiff must establish: (1) the violation of a right guaranteed by the United States Constitution and the laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under the color of law.[8]  See West v. Atkins, 487 U.S. 42, 48 (1988); see also Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir. 1993)).

---

[7] Rule 12(b)(6) states:

> (b) How to Present Defenses.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:
>
> (6) failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12  (internal emphasis omitted).

[8] Plaintiff is afforded no substantive rights under 42 U.S. §1983, but instead is provided "a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775-776 (3d Cir. 2004).

Here, Defendants concede that they were acting under the color of state law.  The only issue that remains is whether a constitutional right of Plaintiff was violated.  The constitutional right Plaintiff relies on is the Eighth Amendment.

In Estelle v. Gamble, the Supreme Court held that the failure to provide adequate medical treatment violated a prisoner's Eighth Amendment right only when it results from "deliberate indifference to a prisoner's serious illness or injury."  429 U.S. 97, 105 (1976).  Under the Eighth Amendment, a prisoner's "serious medical needs" cannot be met with "deliberate indifference."  Estelle, 429 U.S. at 104-05.  As noted in Estelle:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-183, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983.
>
> . . .
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment

Id. at 290-91.

Here, Plaintiff therefore must plausibly allege "(i) [a] serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Estelle v. Gamble, 97 S.Ct. 285 and Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999)).  In Farmer v. Brennan, the Court held that a medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the

8

necessity for a doctor's attention." 511 U.S. 825, 834 (1994). See also Woloszyn v. Cnty of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005). Mere allegations of malpractice are not sufficient to establish a claim under § 1983. See Estelle, 429 U.S. at 105; see also Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

1. **Serious Medical Need**

First, Plaintiff contends his serious medical need is Hepatitis C, and claims that his Hepatitis C flared up while he was incarcerated at GWHCF. Plaintiff alleges in his supplemental filings that the flare up of his Hepatitis C led to tiredness during his incarceration.

Hepatitis C has been held to be a serious medical condition. Clites v. Wetzel, No. 55 C.D. 2016 2016 WL 4069279, *4 (Pa. Commw. Ct. Jul. 28, 2016); Iseley v. Dragovich, 90 F. App'x 577, 580 (3d Cir. 2004); Colon-Martinez v. Pennsylvania Healthcare Servs. Staffs, 530 F. App'x 115, 117 (3d Cir. 2013) (per curiam). Therefore, Plaintiff has shown the existence of a serious medical illness and has met the first prong of an Eighth Amendment violation.

2. **Deliberate Indifference**

Second, Plaintiff contends that prison officials were deliberately indifferent to his serious medical need of Hepatitis C. Initially, he claims that Defendants did not meet his needs while he was incarcerated at GWHCF. But the facts show that the medical providers at GWHCF were not deliberately indifferent to Plaintiff's medical needs. His blood was routinely checked and he was advised that no further treatment was required for Hepatitis C. In addition, he received numerous medications while at the facility. They include: Amlodipine (Norvasc), Doxepin (Sinequan), Fluoxetine (Prozac), Losartan (Cozaar), and Metformin HCL. Although the record is not clear as to whether these drugs were prescribed for Hepatitis C, they show beyond peradventure that Plaintiff was receiving medical treatment and that the staff was not indifferent to his medical needs.

The facts here show at best that Plaintiff was dissatisfied with the level of care he received at GWHCF. However, an inmate's dissatisfaction with the level of care, even if it rises to a claim of malpractice, does not constitute an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

Next, Plaintiff asserts another theory to support his claim of deliberate indifference. He contends that the failure of Defendants to send his medical records or medication along with him to Gander Hill, a Delaware State prison contributed to or caused his Hepatitis C to flare up, resulting in cirrhosis of his liver. He blames Defendants for Delaware State prison officials not treating his Hepatitis C for the first ten days of his incarceration because GWHCF did not send his medical records. During this period his Hepatitis C flared up and he had to be hospitalized. As a result, Plaintiff asserts he spent time in Christiana Hospital recovering.

This claim, however, is without merit for the following reason. In <u>Natale v. Camden Cnty. Corr. Facility</u>, the court held that the obligation of ascertaining a prisoner's current medical status was the responsibility of the incarcerating facility. 318 F.3d 575, 584-85. The Third Circuit held that an institution that incarcerated the plaintiff was required to call plaintiff's prior medical providers to find out his current medical condition, the medication he was taking, and when he should receive the medication. <u>Id.</u> at 580. Specifically, the court noted:

> While laypersons are unlikely to know how often insulin-dependent diabetics need insulin, common sense—the judgment imparted by human experience—would tell a layperson that medical personnel charged with caring for an insulin-dependent diabetic should determine how often the diabetic needs insulin.

<u>Id.</u> (internal citations omitted.) The burden, therefore, is on a prison facility at which a plaintiff is incarcerated to insure that an inmate's medical condition is properly treated.

This Court is bound by the holding in <u>Natale</u>. Plaintiff remained in the State of Delaware prison system for more than ten days before complications arose. This period allowed the prison

10

staff a significant amount of time to contact Plaintiff's treating physicians, former correctional institution, or provide him with proper medical care.  While he was incarcerated at the GWHCF his blood tests always showed a normal range.  Defendants had no knowledge of what was occurring to Plaintiff at the Delaware State prison.

Viewing the facts in the light most favorable to Plaintiff, it is clear that he is dissatisfied with the medical treatment he received at GWHCF, that the staff at GWHCF were not deliberately indifferent to his Hepatitis C, that his medical condition did not decline until he was in Delaware state custody for ten days without treatment, that Defendants were not responsible for the decline, and that he has failed to plead sufficient facts to support a claim for deliberate indifference by Defendants.  As a result, Plaintiff's claim against Defendants will be dismissed.

### B. Plaintiff Has Failed to Plausibly Allege a Claim Against Warden David Byrne for Additional Reasons

Plaintiff has not alleged facts that Warden David Byrne was personally involved in the events that led to his injuries.  This concession was made by Plaintiff on the record at the October 5, 2016 hearing:

> Mr. Ranieri: Well, I was told you have to use him as a start because he's in charge.  He oversees the whole prison.  So everything, he has to answer for everybody.
>
> The Court: So he really didn't do anything?
>
> Mr. Ranieri: No.

(Doc. No. 24 at 20.)

In the Third Circuit, a plaintiff must prove that a defendant in a civil rights action had personal involvement in committing the alleged violation.  See Eppers v. Dragovich, No. 95-7673, 1996 WL 420830, at *4 (E.D. Pa. Jul. 24, 1996) (finding that defendants in civil rights actions must have "personal involvement" in the alleged wrongs).  Plaintiff has failed to allege

that Defendant Byrne had any involvement in the alleged violation of his civil rights and therefore there is no cognizable claim against Warden David Byrne.

In addition, Defendants argue that because Warden David Byrne is not part of the medical staff, and because Plaintiff was under the care of the prison doctor, Warden Byrne could not be deliberately indifferent to him as a matter of law. (Doc. No. 13 at 7-8.) The Court agrees.

"[W]here a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment." Glatts v. Lockett, No. 09-29, 2011 WL 772917 at *9 (W.D. Pa. Feb. 28, 2011); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (Defendants who were not physicians could not be deliberately indifferent to medical needs of patients when patients were treated by the prison doctor).

Here, Plaintiff agreed on the record that his Hepatitis C was being monitored at GWHCF through examination of his blood with the staff noting that no follow up treatment was necessary. (Doc. No. 24 at 20.) Under this circumstance Warden Byrne was not required to personally oversee any action taken in regard to Plaintiff's medical condition and was not deliberately indifferent to Plaintiff's medical needs. Thus, Plaintiff has failed to plead plausible facts showing that Warden Byrne was responsible for Plaintiff's claims. Therefore, Defendants' Motion to Dismiss will be granted as to Warden David Byrne for these additional reasons.

**V.     Amendment of the Complaint Would Be Futile**

Although Plaintiff has not requested that he be granted leave to amend his Complaint, the Court will not grant him leave to amend because doing so would be futile. "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)

(emphasis in original). Granting leave to amend is futile when "the plaintiff was put on notice as to the deficiencies of [her] complaint, but chose not to resolve them." Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002). A plaintiff asserting § 1983 claims is put on notice of the deficiencies of his complaint by way of a defendant's motion to dismiss. Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011). Finally, "a district court need not grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)). Plaintiff has not alleged plausible federal or state law claims against Defendants. Given the foregoing principles, amending the Complaint would be futile.

## VI.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 13) will be granted. All claims against Defendants Warden David Byrne and the Medical Director of George W. Hill Correctional Facility will be dismissed in their entirety. An appropriate Order follows.